## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAMONT MILLER, a/k/a LAMONT MILLER HOWARD,** | ) | |
| Plaintiff | ) | NO. 2:18-cv-01443- |
| | ) | |
| v. | ) | |
| | ) | |
| **CITY OF PHILADELPHIA**; | ) | **CIVIL ACTION** |
| **SERGEANT  MICHAEL SPICER (Badge #5180)**, Individually and as a police officer for the City  of Philadelphia, | ) ) ) | **JURY TRIAL DEMANDED** |
| **PERRY BETTS (Badge #6761)**, Individually and as a police officer for the City of Philadelphia; | ) ) | |
| **THOMAS LICIARDELLO (Badge #4383)**, Individually and as  a police officer for the City of Philadelphia; | ) ) | |
| **LINWOOD NORMAN,** Individually and as a police officer for the City of Philadelphia; | ) ) | |
| **BRIAN  REYNOLDS,** Individually  and  as a police  officer for the City of Philadelphia; | ) ) | |
| **JOHN  SPEISER, (Badge  #7169)**, Individually and as a police officer for the City of Philadelphia; | ) ) | |
| **LIEUTENANT  ROBERT OTTO**, Individually and as a police officer for the City of Philadelphia, | ) ) | |

Defendants

**<u>AMENDED  COMPLAINT</u>**

## I.    <u>JURISDICTION  AND VENUE</u>

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343 (1), (3) and (4).

2.    This is an action for damages authorized by and/or arising under 42 U.S.C. §§ 1983, 1985, the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

3.      The matter in controversy exceeds, exclusive of interest and costs, the sum of One Hundred Fifty Thousand ($ 150,000.00) Dollars.

4.      All conditions precedent to jurisdiction have occurred or been complied with.

5.      State claims are brought pursuant to this Honorable Court's supplemental jurisdiction under 28 U.S.C. § 1367 (a).

6.      Venue is proper in the Eastern District of Pennsylvania and pursuant to 28 U.S.C. § 1391. Plaintiff resided in the Eastern District of Pennsylvania and the alleged unlawful conduct of Defendants, as set forth in this Amended Complaint, which forms the legal basis of the Plaintiff's claims/causes of action occurred within the Eastern District of Pennsylvania.

## II.    **PARTIES**

7.      Plaintiff Lamont Miller, a/k/a Lamont Miller Howard (hereinafter "Plaintiff"), is an adult individual whose date of birth is December 4, 1972 and whose principal residence is 2046 Sigel Street, Philadelphia, Philadelphia County, Pennsylvania 19145.

8.      Defendant City of Philadelphia is a political subdivision of the Commonwealth of Pennsylvania, situated within the Eastern District of Pennsylvania, with its address at City Hall, Philadelphia, Pennsylvania 19107. It is incorporated and exists as a city of the First Class under the laws of the Commonwealth of Pennsylvania and is empowered to establish, regulate and control its police department for enforcement of laws within its jurisdiction and for the purpose of protecting and preserving the persons and property within the jurisdiction of the City and owns, operates, manages, directs and controls the City of Philadelphia Police Department which

employed the defendant police officers at all times relevant to the within action.

9.    Defendant Sergeant Michael Spicer, (hereinafter "Defendant Michael Spicer") is an adult individual who is currently serving in his capacity as a sworn officer in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officer, Defendant Michael Spicer is entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

10.    Defendant Perry Betts, (hereinafter "Defendant Betts") is an adult individual who is currently serving in his capacity as a sworn officer in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officer, Defendant Betts is entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

11.    Defendant Thomas Liciardello, (hereinafter "Defendant Liciardello") is an adult individual who is currently serving in his capacity as a sworn officer in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officer, Defendant Liciardello is entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

12.    Defendant Linwood Norman, (hereinafter "Defendant Norman") is an adult individual who is currently serving in his capacity as a sworn officer in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officer, Defendant Norman is entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

13.    Defendant Brian Reynolds, (hereinafter "Defendant Reynolds") is an adult individual who is currently serving in his capacity as a sworn officer in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officer, Defendant Reynolds is entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

14.    Defendant John Speiser, (hereinafter "Defendant Speiser") is an adult individual who is currently serving in his capacity as a sworn officer in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officer, Defendant Speiser is entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

15.    Defendant Lieutenant Robert Otto, (hereinafter "Defendant Otto") is an adult individual who is currently serving in his capacity as a sworn officer in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officer, Defendant Otto is entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

16.    Plaintiff avers that, at all times relevant to the within action, Defendant Otto served as a supervisory lieutenant for the Defendant City of Philadelphia's police department and was a supervisor of Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds and Speiser.

17.    Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser and Otto were entrusted to protect the constitutional rights of those they encountered and, at all times relevant to the within action, acted under their authority and color or title of state or

municipal public law or ordinance and acted in concert with one or more of the individual defendants named herein in the performance of their duties or the conduct of their actions. They are being sued in their official and individual capacities.

18.     Defendants Spicer, Betts, Liciardello, Norman, Reynolds, Speiser and Otto, at all times relevant to the within action, were serving in their capacities as sworn officers in the Philadelphia Police Department. As police officers, said Defendants were entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

### III.    FACTS GIVING RISE TO CAUSE OF ACTION

19.     On or about June 16, 2010, Plaintiff left his home to attend a backyard barbeque/cookout with his minor child, who was approximately three (3) years of age.

20.     The aforesaid barbeque/cookout was held at an address in the vicinity of 68th and Carroll Streets, in the southwest section of Philadelphia, Philadelphia County, Pennsylvania.

21.     For more than thirty (30) years prior to June 16, 2010, the Defendant City of Philadelphia, its decision makers, supervisory/management level employees of the Philadelphia Police Department and police officers attached to the narcotics units have promulgated customs and policies which authorize, accept, condone and fail to punish the illegal, warrantless searches of civilians, such as Plaintiff.

22.     For more than thirty (30) years preceding June 16, 2010, pursuant to the aforesaid customs and policies of Defendant City of Philadelphia, Philadelphia police officers assigned to the department's narcotics units engaged in a pattern and practice of securing and executing search warrants, falsifying evidence and making arrests, without probable cause, based on fraud and misrepresentation.

23.     Prior to June 16, 2010, Defendant City of Philadelphia, by and through its decisionmakers, supervisory/management level employees and high-ranking officials of its police department, established quotas for narcotics arrests on behalf of the police officers assigned to its narcotics units.

24.     Prior to June 16, 2010, Defendant City of Philadelphia, by and through its decisionmakers, supervisory/management level employees and high-ranking officials, directed and authorized the police officers assigned to the various narcotics units to take all necessary steps, including serving and executing search warrants based on fraud and misrepresentation and falsifying evidence, in order to effectuate drug related arrests and/or to meet the aforesaid quotas.

25.     Prior to June 16, 20I 0, pursuant to the aforesaid customs and policies, Defendants Spicer, Betts, Liciardello, Norman, Reynolds, Speiser and Otto, engaged in a pattern and practice of violating the civil rights of citizens by securing and executing search warrants without probable cause, based on fraud and misrepresentation, falsifying evidence and subjecting citizens to false arrests, false imprisonment, malicious prosecutions and substantive due process violations while attempting to meet the aforesaid quotas.

26.     Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser and Otto willfully engaged in violation of citizens' constitutional rights by falsifying evidence and subjecting citizens to false arrest, false imprisonment, malicious prosecution and substantive due process violations.

27.    On the early afternoon of June 16, 2010, Plaintiff was walking to the Carroll Street residence in order to attend the aforesaid barbeque/cookout and spend time with his minor child.

28.    As Plaintiff was walking to the Carroll Street location,    a black Jeep Cherokee with tinted windows, containing several of the above-named Defendant officers, pulled next to him.

29.    At the aforesaid date and time, Defendant Norman opened the window of the vehicle and yelled to Plaintiff "We are going to get you nigger."

30.    Plaintiff avers that at the time Defendant Norman threatened him, three (3) other adult male individuals dressed in plain clothes were in the Jeep Cherokee.

31.    Plaintiff subsequently arrived at the Carroll Street location and attended the aforesaid barbeque/cookout with his minor son and other guests.

32.    On June 16, 20I0, while attending the aforesaid barbeque/cookout, neither Plaintiff nor his minor child had committed any criminal offense nor had they violated any laws of the Commonwealth of Pennsylvania and/or the United States of America.

33.    On June 16, 2010, officers of the narcotics division for the Defendant City of Philadelphia, including Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds and Speiser, conducted a raid at a property at 6844 Guyer Street, Philadelphia, Philadelphia County, Pennsylvania.

34.    On the aforesaid date, Defendant Michael Spicer, acting in concert with the other named Defendant officers and without legal justification or probable cause, entered the Carroll Street location.

35.    On the aforesaid date, at the aforesaid location, Defendant Michael Spicer, acting in concert with the other above-named Defendant officers and accompanied by additional Philadelphia police officers, confronted Plaintiff and demanded that Plaintiff empty his pockets.

36.    Plaintiff asked Defendant Michael Spicer and the other officers the reason for their actions and Defendant Michael Spicer responded, "Shut the fuck up, nigger".

37.    Defendant Michael Spicer, without a warrant, probable cause, legal justification or Plaintiff's consent conducted three (3) separate searches of Plaintiff.

38.    Each search of Plaintiff uncovered no illegal controlled substances, contraband or any item that would subject Plaintiff to arrest, incarceration or imprisonment.

39.    On June 16, 2010, prior to Plaintiff attending the barbeque/cookout on Carroll Street, his mother gave him a sum of cash to assist with his bills and expenses.

40.    On June 16, 2010, Defendant Michael Spicer, while conducting the aforesaid three (3) separate illegal searches of Plaintiff's person, seized the Four Hundred Sixty-Five($ 465.00) Dollars cash from Plaintiff's pocket and placed said cash in his pocket.

41.    Defendant Michael Spicer neither gave Plaintiff a receipt for the cash that he converted from Plaintiff's pocket, nor did he list or mention the cash seized in any official police report or inventory.

42.    After searching Plaintiff three (3) times at the Carroll Street location and finding no illegal controlled substances or contraband, Defendant Michael Spicer arrested Plaintiff and took him into custody in the presence of Plaintiff's minor child, friends and individuals attending the Carroll Street barbeque/cookout.

43.    On June 16, 2010, Defendant Michael Spicer, acting in concert with the other above-named Defendant officers, involuntarily and forcibly removed Plaintiff from the Carroll Street location and transported him to 6844 Guyer Street, Philadelphia, Philadelphia County, Pennsylvania, the site of the aforesaid police raid.

44.    While at the 6844 Guyer Street premises, Defendant Michael Spicer, without probable cause or legal justification, violently threw Plaintiff onto the hardwood flooring at said location.

45.    After throwing Plaintiff onto the floor at the 6844 Guyer Street location, Defendant Michael Spicer falsely stated to Plaintiff that the Defendants' had seized fourteen (14) grams of crack cocaine from Plaintiff's front pants pocket.

46.    Plaintiff responded to Defendant Michael Spicer's false accusation by stating, "Come on officer, what is this? I am not stupid."

47.    Defendant Michael Spicer responded, "I am not stupid either, nigger."

48.    Plaintiff stated, "Please don't call me out by that name," to which Defendant Michael Spicer responded, "I am the police and I do what I want."

49.    Defendant Michael Spicer, acting in concert with the other named Defendants and pursuant to the aforesaid customs, policies and practices of Defendant City of Philadelphia, transported Plaintiff from the 6844 Guyer Street residence to police headquarters and charged him with the crimes of Manufacture, Delivery or Possession With Intent to Manufacture or Deliver, 35 Pa.C.S. §780-113(a)(30); Criminal Conspiracy, 18 Pa.C.S. §903; and Intentional Possession Controlled Substance By Person Not Registered, 35 Pa.C.S. §780-113(a)(16). A copy of the Criminal Information is attached hereto, marked Exhibit "A" and incorporated by reference herein as though set forth at length below.

-9-

50.     Plaintiff's bail was originally set at Two Hundred Thousand ($200,000.00) Dollars and subsequently, upon motion of Defendants, was raised to Five Hundred Thousand ($500,000.00) Dollars.

51.     Subsequent to the setting of bail, Plaintiff was incarcerated on the aforesaid charges.

52.     Plaintiff was unable to secure release on bail and remained incarcerated until after his guilty plea and sentencing on March 3, 2011, a total of 260 days.

53.     On March 3, 2011, Plaintiff's case was called for disposition in the Court of Common Pleas, Criminal Trial Division of the County of Philadelphia.

54.     On March 3, 2011, Defendant Michael Spicer, acting in concert with the other named Defendants and pursuant to the customs, policies and practices of Defendant City of Philadelphia, advised Plaintiff that he would receive probation and be released from prison if he pleaded guilty to the charge of Manufacture, Delivery or Possession With Intent to Manufacture or Deliver a Controlled Substance, a felony.

55.     In order to coerce Plaintiff to plead guilty on the false charges, Defendant Michael Spicer threatened Plaintiff that if he did not accept the plea bargain, Defendants would produce testimony to insure that Plaintiff was convicted on all charges and incarcerated for a minimum period of five (5) years in a state prison.

56.     As a direct response to the threats of Defendant Michael Spicer, Plaintiff accepted the plea bargain, entered a guilty plea and was sentenced on the aforesaid charge of Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Substance, a felony.

57.     On March 3, 2011, after entering his guilty plea and being sentenced on the aforesaid criminal charge, Plaintiff was released from prison.

58.     In December 2012, the Philadelphia District Attorney's Office informed Philadelphia Police Commissioner Ramsey that Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds and Speiser no longer would be permitted to be witnesses in narcotic cases due to an ongoing investigation regarding their credibility as police officers, and said officers were transferred out of the narcotics unit.

59.     Pursuant to a criminal complaint (Case No. 2:14-cr-00412-ER-1) filed in the United States District Court for the Eastern District of Pennsylvania on July 30, 2014, Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds and Speiser were arrested and charged with racketeering conspiracy, civil rights violations, robbery and extortion.

60.     The federal complaint asserted that the aforesaid Defendants, on a regular basis, falsified facts in order to establish probable cause for their arrests.

61.     The federal complaint further asserted that said Defendants planted drugs, stole drugs, stole money and lied in the preparation of police paperwork and in their court-related testimony.

62.     Based upon the allegations contained in the federal complaint against the aforesaid Defendants, the Defender Association of Philadelphia filed petitions to reopen more than One Thousand Four Hundred (1,400) convictions in which the aforesaid Defendants were involved, including Plaintiff's conviction.

63.     On or about September, 2014, the Defender Association of Philadelphia, by and through Assistant Defender Bradley S. Bridge (hereinafter "Attorney Bridge"), filed a Motion

for A New Trial Based Upon After Discovered Evidence; alternatively, for Post-Conviction Collateral Relief or, alternatively, for A Writ of Habeas Corpus. A copy of said Motion is attached hereto, marked Exhibit "B" and incorporated by reference herein as though set forth at length below.

64.    On April 8, 2016, Attorney Bridge's Motion was granted by the Honorable Sheila Woods-Skipper, Judge of the Court of Common Pleas, Criminal Division, for the County of Philadelphia. A copy of the aforesaid Order of Court is attached hereto, marked Exhibit "C" and incorporated by reference herein as though set forth at length below.

65.    On April 8, 2016, a *Nolle Prosequi* was entered by the Philadelphia District Attorney's Office pursuant to Pa.R.Crim.P. 585 and all criminal charges against the Plaintiff were dismissed. (See Exhibit "C")

66.    By letter dated April 15, 2016, Attorney Bridge and the Defender Association of Philadelphia notified Plaintiff "that on April 8, 2016, the Philadelphia District Attorney's Office and Judge Sheila Woods-Skipper agreed with us that your conviction was improper. As a result, the prosecutor's office reopened your conviction and then dismissed the charges against you." A copy of said letter from Assistant Defender Bridge is attached hereto, marked Exhibit "D" and incorporated by reference herein as though set forth at length below.

67.    As a result of the letter from Attorney Bridge dated April 15, 2016, Plaintiff first learned of the improprieties and illegal conduct of Defendants Michael Spicer and the other named Defendants regarding Plaintiff's false arrest, false imprisonment and the resulting malicious prosecution of Plaintiff and deprivation of Plaintiffs substantive due process and violation of Plaintiffs civil rights.

68.    The conduct of the Defendants in conducting an illegal, warrantless search without probable cause of Plaintiff and in terrifying Plaintiff and his minor child was pursuant to a policy which was promulgated, created, accepted and/or acquiesced to by the Defendant City of Philadelphia, its high-ranking policymakers and decisionmakers and supervisory management level employees, including those in the police department, and as further set forth in paragraph 169 and Exhibits B, C, and D.

69.    Defendants City of Philadelphia and supervisory/management level employees of the Philadelphia Police Department have further promulgated customs and policies which authorize, accept, condone and fail to punish illegal, warrantless searches without probable cause or consent,  false arrests, false imprisonment, malicious prosecutions and violations of substantive due process rights of civilians, such as Plaintiff, and as further set forth in paragraph 169 and  Exhibits B, C, and D.

70.    Defendant officers acted willfully, deliberately, maliciously, and/or with reckless disregard for Plaintiff's civil and constitutional rights, as hereinafter described, by engaging in the above-described conduct.

71.    Defendants' conduct, while acting under the color of state law and as agents, servants and employees of the Defendant City of Philadelphia and its high-ranking policymakers and decisionmakers, was undertaken  pursuant to a conspiracy to subject civilians, including Plaintiff, to unlawful arrest, false imprisonment, malicious prosecution, violation of equal protection and due process of law, and to otherwise deprive citizens and Plaintiff of their civil and constitutional rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania.

72.    Defendant officers disregarded proper police practices regarding the use of search warrants and the prohibitions against conducting warrantless searches without probable cause or consent and subjecting civilians, including Plaintiff, to false arrests, false imprisonment, malicious prosecutions and deprivations of equal protection and due process of law rights, and as further set forth in paragraph 169 and Exhibits B, C, and D, which are incorporated by reference as though set forth at length below.

73.    Defendant officers acted willfully, deliberately, maliciously and/or with reckless disregard for Plaintiff by conducting the aforesaid illegal, warrantless search and seizure without probable cause or consent, by terrifying Plaintiff and his minor child, and by subjecting Plaintiff to false arrest, false imprisonment, malicious prosecution and violation of Plaintiff's equal protection and due process of law rights, all of which was motivated by an invidious, racially discriminatory hatred and animus based upon Plaintiff's membership in Constitutionally-protected minority classes, to wit, race (African-American) and skin color (black).

74.    At all times herein mentioned, Plaintiff's civil and constitutional rights were well-known and well-established, and Defendant City of Philadelphia, by and through the Defendants and the supervisory and/or management level employees of the Philadelphia Police Department, knew or should have known of Plaintiff's aforesaid well-known and well-established civil and constitutional rights and that the Defendants were engaging in the above-described wrongful, illegal and unconstitutional conduct, but took no action to prevent said conduct due to its aforesaid *de facto* policy, custom, or practice of deliberate indifference, condonation, acquiescence, ratification, and/or adoption of the willful misconduct of its police

officers, including the above-named Defendants, and as set forth in paragraph 169 and Exhibits B, C, and D.

75.     Defendant City of Philadelphia, by and through Defendants and the actions of the supervisors and management level employees of the Philadelphia Police Department, possessed actual and constructive knowledge of the facts set forth in the indictment in Case No. 2:14-cr-00412 in the United States District Court for the Eastern District of Pennsylvania, which is incorporated by reference as though set forth at length below and Exhibits B, C, and D attached hereto, and adopted, participated in, acquiesced to, and/or ratified the above-described wrongful, illegal and unconstitutional conduct of the Defendants

76.     Defendant City of Philadelphia, by its policies, customs and practices and the actions of Defendants and the supervisors and management level employees and officers of the Philadelphia Police Department, acting under the color of state law and motivated by prejudice against the Plaintiff as aforesaid, has violated and deprived the Plaintiff of rights, privileges and immunities procured by the Constitutions and the laws of the United States of America and the Commonwealth of Pennsylvania, thereby causing the injuries and damages to Plaintiff as more fully described herein.

77.     Defendant Michael Spicer and the other named Defendant officers acted willfully, deliberately, maliciously and with reckless disregard of Plaintiff's constitutional and statutory rights and said actions were part of a pattern, practice and custom that was condoned, adopted, participated in, and ratified by Defendant City of Philadelphia and subjected its citizens to false arrests, false imprisonment, malicious prosecutions, and deprivations of equal protection and due process of law rights.

78.     On June 16, 2016, prior to being subjected to false imprisonment by Defendants, Plaintiff had neither committed any criminal offenses or violations of the laws of the City of Philadelphia, the Commonwealth of Pennsylvania, and the United States of America nor had he engaged in any conduct which justified Defendants' actions.

79.     The only evidence leading to Plaintiffs conviction resulted from the false information provided by Defendant Michael Spicer and the above-described illegal conduct of all named Defendants.

80.     Prior to June 16, 2010, the high-ranking policymakers and decisionmakers of Defendant City of Philadelphia, including the supervisory/management level employees of the police department, knew or should have known, and possessed actual and constructive notice, of the corruption, lack of integrity and civil rights violations committed by Defendant Michael Spicer and the above-named Defendant officers, and as set forth in the indictment in Case No. 2:14-cr-00412 in the United States District Court for the Eastern District of Pennsylvania and Exhibits B, C, and D attached hereto, which are incorporated by reference as though set forth at length below.

81.     Plaintiff avers that, at the time of his arrest and for years before, federal agents, federal prosecutors;  the Philadelphia Police Commissioner and his predecessors and subordinates;  former District Attorney Lynne Abraham, her subordinates and her successor; and  former District Attorney Seth Williams, possessed actual and constructive knowledge of the corruption, lack of integrity and civil rights violations of the Defendants including, without limitation, the facts and information ultimately set forth in the indictment in Case No. 2:14-

cr-00412 in the United States District Court for the Eastern District of Pennsylvania and   Exhibits B, C, and/or D above,   all of which is in the exclusive possession and control of the Commonwealth of Pennsylvania and incorporated by reference as though set forth at length below.

82.    Plaintiff further avers that at the time of his arrest and for years leading up to his arrest, the above-named Defendant officers were the subject of   investigations and questions raised by state and federal prosecutors and other sources, which ultimately resulted in the federal prosecution of said officers in July 2014, and the records of said federal investigations documenting the corruption, lack of integrity and civil rights violations committed by Defendant Michael Spicer and the above-named Defendant officers are in the exclusive possession and control of said federal investigative agencies.

83.    At all times herein mentioned, and despite its prior knowledge of the facts set forth  above in paragraphs 19 through 57, Defendant City of Philadelphia  failed to discipline, supervise, and/or retrain  the defendant officers and/or other officers in the police department in cases involving violations of the rights of civilians, including cases involving improper searches and seizures without probable cause or consent, providing false information and subjecting civilians to false arrests, false imprisonment, malicious prosecutions and violations of  equal protection and due process of law rights.

84.    In March 2011, Defendant City of Philadelphia possessed  prior actual and constructive  knowledge of the facts and information that ultimately would form the  basis for:(i) the  July 30, 2014 criminal indictment against the above-named Defendants  and (ii) the petition of  the Defender Association of Philadelphia    to reopen more than One Thousand

Four Hundred (1,400) convictions in which the aforesaid Defendants were involved, but remained deliberately indifferent to the Defendants' actions, as well as the actions of other Philadelphia police officers, in engaging in unlawful stops, conducting illegal, warrantless searches and seizures without probable cause or consent, and subjecting civilians, including Plaintiff, to false arrest, false imprisonment, malicious prosecution and violation of equal protection and due process rights, and encouraged, tolerated, ratified, and/or adopted said unlawful behavior and practices, rather than institute an investigation and impose any remedial discipline, supervision, and/or retraining, of said offending police officers.

85.     Defendant City of Philadelphia has further failed or refused to take remedial or disciplinary action against its police officers who use their status as law enforcement officers to unlawfully stop citizens, including Plaintiff, and subject them to illegal searches and seizures without probable cause or consent, false arrests, false imprisonment, malicious prosecutions and violations of equal protection and due process of law rights, under circumstances where said citizens have committed no crime or violation of the laws of the United States of America and the Commonwealth of Pennsylvania.

86.     Defendant City of Philadelphia encouraged, tolerated, ratified, adopted and/or was deliberately indifferent to patterns, practices and customs of its police officers, including Defendants, who failed to follow proper procedures and guidelines, invoked a code of silence, and wrongfully and deliberately gave sworn or unsworn testimony supporting the actions and conduct of fellow officers, regardless of whether said actions and conduct violated the rights of civilians and the laws of the United States of America and the Commonwealth of Pennsylvania.

87.     Defendant City of Philadelphia encouraged, tolerated, adopted, ratified and/or

remained deliberately indifferent to patterns and practices of its police officers, including Defendants, who refused to intervene when other officers violated the rights of citizens in their presence and refused to report, or provide information concerning, the misconduct of other officers, thereby adhering to a custom or practice known as "the Blue Wall" and/or "the Code of Silence".

88.    At all times herein mentioned, the Internal Affairs Division (hereinafter "IAD") of the Philadelphia Police Department failed to provide an internal mechanism that imposed meaningful disciplinary and remedial actions upon its officers and allowed excessive delays in resolving disciplinary issues, despite its actual and constructive knowledge of the facts and information set forth in paragraphs 80, 81 and 84 above.

89.    At all times herein mentioned, the IAD of the Philadelphia Police Department failed to impose meaningful disciplinary and remedial actions upon the above-named Defendants, as well as other police officers who engaged in similar wrongful conduct.

90.    At all times herein mentioned, the IAD of the Philadelphia Police Department failed to impose meaningful disciplinary and remedial actions upon the above-named Defendants for their malicious and unlawful actions vis-à-vis the Plaintiff.

91.    As a result of the inadequate, ineffective and substandard customs, policies and practices of the IAD, as set forth above, no proper or meaningful investigations were conducted concerning the conduct of the above-named Defendants, who performed an illegal, warrantless search and seizure of Plaintiff, without probable cause or consent and subjected Plaintiff to false arrest, false imprisonment, malicious prosecution and the deprivation of his

equal protection and due process of law rights.

92.    The conduct of the IAD investigation demonstrates that its personnel are not adequately trained and supervised in the proper conduct of investigations involving the execution by police officers of illegal and warrantless searches without probable cause and consent and subjecting civilians who have committed no crimes to false arrests, false imprisonment, malicious prosecutions, deprivations of equal protection and due process of law rights, and other related injuries and damages.

93.    At all times herein mentioned, the investigatory procedures of the IAD of the Philadelphia Police Department revealed a pattern of administrative conduct wherein the actions of offending police officers, and all reasonable inferences derived therefrom, were viewed by the IAD of Defendant City of Philadelphia in a light most favorable to the offending police officers, as opposed to citizens/civilians victimized by said unlawful conduct, and no remedial discipline, supervision, and/or retraining of said police officers was imposed by the IAD of the Philadelphia Police Department and/or Defendant City of Philadelphia.

94.    The investigations of the IAD of the Philadelphia Police Department regularly failed to impose meaningful discipline and/or remedial actions upon its offending police officers and said investigations lacked quality and contained serious deficiencies.

95.    The investigations conducted by the IAD and the investigators for the Defendant City of Philadelphia fell below acceptable police standards, including police standards for investigating illegal and warrantless searches and seizures of citizens, without probable cause or consent, including terrorizing its citizens who had done nothing wrong

and   subjecting them to false arrest, false imprisonment, malicious prosecution, deprivation of equal protection and due process of law  rights, and other related injuries and damages.

96.     The Defendant City of Philadelphia has a long-standing, documented history of civil rights violations by its police officers as a direct and proximate result of its *de facto* policies, customs, omissions, failure to properly investigate or take proper remedial or disciplinary action against its police officers, especially those who conduct unlawful stops, warrantless searches and seizures without probable cause or consent, and who subject citizens who have done nothing wrong, like Plaintiff, to false arrests, false imprisonment, malicious prosecutions, deprivations of equal protection and  due process of law  rights,  and other related injuries and damages.

97.     The aforesaid documented history includes more than one thousand four hundred (1,400) cases wherein convictions were investigated, re-opened and *nolle prosequied* by Order of Court at the behest of organizations such as the Defender Association of Philadelphia due to  the improper and illegal conduct of one or more of the above-named  Defendant officers.

98.     The Defendant City of Philadelphia was aware of and deliberately indifferent to  the unconstitutional acts and omissions of the above-named Defendant officers, which resulted in the investigation, re-opening and/or *nolle prosequi* of approximate one thousand four hundred (1,400) cases involving said Defendant officers, as described above.

99.     The Defendant City of Philadelphia was aware of,   and deliberately indifferent to,  the directive from the Philadelphia District Attorney's Office in December 2012  that the above-named Defendant officers would no longer be permitted as witnesses in narcotics cases.

100.    Defendant City of Philadelphia was aware of, and deliberately indifferent to, more than a thousand complaints alleging violations of citizens' and visitors' civil and constitutional rights by the above-named Defendants, as well as other City of Philadelphia police officers, including falsification of evidence, warrantless searches without probable cause or consent, and the subjecting of its citizens to false arrests, false imprisonment, malicious prosecutions, deprivations of equal protection and due process of law rights, and other related injuries and damages.

101.    As a result of Defendant City of Philadelphia's above-described customs, policies, acts, failure to act, omissions, systemic deficiencies, failure to adequately train, investigate and/or discipline its police officers, and its deliberate indifference to the violation of the civil rights of its citizens and visitors by high-ranking decisionmakers, policymakers and supervisory/management level members of its police department, the above-named individual Defendants believed that their conduct would not be scrupulously and properly investigated and they could violate the civil rights of Plaintiff and other citizens and visitors of the City of Philadelphia with impunity by unlawfully engaging in willful misconduct, including committing perjury, fraud, and falsifying evidence in order to arrest and prosecute others, including Plaintiff, as evidenced by Defendant Michael Spicer's remark to Plaintiff on June 16, 2010 set forth in paragraph 48 above, to wit, "I am the police and I do what I want."

102.    The above-named Defendant officers acted under the color of state law and entered into a conspiracy with each other on June 16, 2010, and that continued through to Plaintiff's sentencing on March 3, 2011, to deprive him of his rights, privileges, and immunities under the constitutions of the United States, the Commonwealth of Pennsylvania,

and their progeny, and engaged in the overt acts set forth, *inter alia*, in paragraphs 32 through 61 above in furtherance of said conspiracy.

103.    The above-named Defendant officers acted under color of state law and entered into a conspiracy with each other, motivated by invidiously discriminatory prejudice against Plaintiff due to his race (African-American) and skin color (Black) to deprive him of his rights, privileges and immunities under the constitutions of the United States of America, the Commonwealth of Pennsylvania, and  applicable federal and state statutes and law.

104.    The above-named Defendant officers further deprived Plaintiff of his aforesaid rights guaranteed to him by the Constitutions of the United States,  the Commonwealth of Pennsylvania, and their progeny to be secure in his person and property, to be free from unlawful searches, false arrest, false imprisonment, malicious prosecution, deprivation of equal protection and due process of law, and other related injuries and damages.

105.    The willful conduct of the above-named  Defendant officers was accepted, condoned, adopted, ratified,  and participated in by Defendant City of Philadelphia and  the high-ranking decisionmakers, policymakers and   supervisory/management level employees of its police department throughout Plaintiff's unlawful incarceration from June 16, 2010 through  March 3, 2011, a total of 260 days, and until the  *nolle prosequi*  of said criminal charges by the Philadelphia District Attorney's Office on April 8, 2016.

## DAMAGES

106.    As a direct and proximate result of the incident described above, Plaintiff became shaken, upset, disturbed, embarrassed and humiliated, resulting in him being reduced to intense episodes of crying, tachycardia, hypertension, and panic at the time of, and after, the incident .

107.    Plaintiff continues to suffer, and will suffer indefinitely in the future, further grievous physical, psychological and emotional harm and damages, including intense physical, emotional, and psychological pain and suffering; headaches; intense fear and apprehension of future unprovoked, vicious, and unlawful police misconduct; depression; embarrassment and humiliation; tearfulness and crying spells; intermittent anxiety and panic attacks accompanied, *inter alia*, by chest pain and discomfort, diaphoresis, tachycardia, shortness of breath, and other physiological reactions; inability to concentrate; difficulty making decisions; mental confusion, memory loss, and distress; insomnia/difficulty sleeping; nightmares, fatigue; lack of energy; weight fluctuation; impairment in social and/or occupational functioning, and loss of interest and enjoyment in life's activities.

108.    As a direct and proximate result of the Defendants' willful misconduct as heretofore described, Plaintiff was obliged to spend various sums of money for medicines, medical and healthcare facilities, psychiatric and/or psychological treatment, counseling, and/or therapy in an effort to cure the physical, mental and emotional harm, embarrassment and humiliation that he suffered, and may suffer in the future, and may be compelled to expend such sums permanently and/or for an indefinite time in the future, to his great detriment and financial loss.

109.    As a direct and proximate result of the Defendants' willful misconduct as heretofore described, Plaintiff suffered great loss and/or depreciation of his earnings and/or impairment of

his earning capacity, and may continue to suffer the same permanently and/or for an indefinite time in the future, to his great detriment and financial loss.

110.    As a direct and proximate result of the aforesaid Defendants' willful misconduct as heretofore described,   Plaintiff suffered physical injury, severe psychological, psychiatric, and emotional injury,  harm,  pain, mental anguish, embarrassment and humiliation, and will continue to suffer same permanently and/or for an indefinite time in the future, to his great detriment and financial loss.

111.    As a direct and proximate result of the Defendants' willful misconduct  as heretofore described,    Plaintiff    endured  a loss of life's enjoyments and pleasures, and will continue to suffer same permanently and/or for an indefinite time in the future, to his great detriment and financial loss.

112.    At all times herein mentioned, the harm suffered by Plaintiff, as heretofore described, was the direct and proximate result of the willful misconduct  of the Defendants,  and was not caused by any negligent act or failure to act on the part of the Plaintiff,   who conducted himself in a careful and prudent manner.

113.    At all times herein mentioned, the Plaintiff has pursued all necessary and reasonable measures to mitigate his damages.

**<u>COUNT I</u>**
**<u>VIOLATION OF 42 U.S.C. § 1983 - FOURTH AMENDMENT</u>**
**<u>(PLAINTIFF vs. ALL DEFENDANTS)</u>**

114.    Plaintiff hereby incorporates by reference paragraphs 1 through 113 as though set forth at length below.

115.    The Fourth Amendment to the United States Constitution provides as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

116.   Article I, Section 8 of the Pennsylvania Constitution provides as follows:

**§ 8.  Security from searches and seizures.**
The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

117.    At all times relevant to the within action, Defendants acted under the color of state law and deprived Plaintiff of his federal and state constitutional rights by conducting an unlawful search and seizure of the Plaintiff in violation of the 14th Amendment of the United States Constitution, Article I Section 8 of the Pennsylvania Constitution, and their progeny, as described above.

118.    On June 16, 2010, Defendant Michael Spicer, acting in concert with and pursuant to a conspiracy with the other named Defendant officers and pursuant to the policies, customs and practices of the Defendant City of Philadelphia, as heretofore described, conducted a warrantless search   of Plaintiff without probable cause or consent.

119.    On June 16, 2010, Defendant Michael Spicer, acting in concert with and pursuant to a conspiracy with the other named Defendant officers and pursuant to the policies, customs, and practices of the Defendant City of Philadelphia, conducted a warrantless seizure of Plaintiff without probable cause by  falsely, maliciously, and without legal justification and

privilege of arrest placing Plaintiff under arrest for Manufacture, Delivery or Possession With Intent to Manufacture or Deliver, 35 Pa.C.S. §780-113(a)(30); Criminal Conspiracy, 18 Pa.C.S. §903; and Intentional Possession Controlled Substance By Person Not Registered, 35 Pa.C.S. §780-113(a)(16).   A copy of the Criminal Information from said prosecution (Docket No. CP-51-CR-0000427-2011) filed in the Court of Common Pleas of Philadelphia County is attached hereto as Exhibit "A" and incorporated by reference as though set forth at length below.

120.    Defendant Michael Spicer, in conspiracy with the above-captioned Defendant officers, and while acting under the color of state law and as agents, servants and employees of the Defendant City of Philadelphia and its policymakers and supervisory/management level employees, arrested Plaintiff and further deprived him of his liberty by confining him in a police vehicle, at police headquarters, and by incarcerating him in a jail for 260 days without probable cause, proper warrants, proper complaint or legal justification.

121.    Defendant Michael Spicer arrested Plaintiff, deprived Plaintiff of his liberty and took Plaintiff into custody initially on the false charges of Manufacture, Delivery or Possession With Intent to Manufacture or Deliver, 35 Pa.C.S. §780-113(a)(30); Criminal Conspiracy, 18 Pa.C.S. §903; and Intentional Possession Controlled Substance By Person Not Registered, 35 Pa.C.S. §780-113(a)(16), despite the existence of overwhelming exculpatory evidence and the lack of probable cause necessary to assert any official privilege to detain or imprison Plaintiff.

122.    Defendant Michael Spicer's, Betts', Liciardello's, Norman's, Reynolds', Speiser's, and/or Lieutenant Otto's arrest, detention and confinement of Plaintiff was unjustified

and for their own malicious purposes.

123.    Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Lieutenant Otto did not arrest, confine and imprison Plaintiff for a legitimate law enforcement purpose, but rather said arrest was a direct and proximate result of the conspiracy between them pursuant to the customs, policies and practices of the Defendant City of Philadelphia in allowing its police officers to subject innocent civilians, including Plaintiff, to warrantless searches and seizures without probable cause or consent, false arrests, false imprisonment, malicious prosecutions, deprivations of equal protection and due process of law rights, and other related injuries and damages.

124.    The conduct of Defendant Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Lieutenant Otto   in subjecting Plaintiff to false arrest was accepted, approved, condoned, acquiesced to, adopted, and ratified by Defendant, City of Philadelphia and   their policymakers, supervisors and management level employees, who, at all times acted under color of state law.

125.    Defendants' illegal and unjustified arrest of Plaintiff occurred on June 16, 2010 and was followed by an illegal and improper prosecution by Defendants and incarceration of Plaintiff for 260 days, which ultimately resulted in the aforesaid criminal charges being *nolle prosequied* by the District Attorney of Philadelphia County and dismissed by Order of the Court of Common Pleas of Philadelphia County  on April 8, 2016. A copy of said April 8, 2016 Order of Court is attached hereto as Exhibit "C" and incorporated by reference as though set forth at length below.

126.    As a result of the conduct of Defendants as set forth above, Plaintiff was unlawfully detained and incarcerated from June 16, 2010 until subsequent to his guilty plea and sentencing on March 3, 2011, a total of 260 days.

127.    As a direct and proximate result of the conduct, acts and omissions of all Defendants, Plaintiff sustained damages and injuries as heretofore described.

WHEREFORE, Plaintiff Lamont Miller, respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants for all damages suffered by him, including compensatory damages, punitive damages against individual Defendants, interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988, and such other relief that this Honorable Court deems just and reasonable.

**COUNT II –**
**42 U.S.C. § 1983, 1988 –**
**14TH AMENDMENT EQUAL PROTECTION AND**
**DUE PROCESS OF LAW VIOLATIONS**
**(PLAINTIFF vs. ALL DEFENDANTS)**

128.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1 through 113 and Count I as though the same were more fully set forth at length herein.

129.    The Fourteenth Amendment to the United States Constitution states in Section I that:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

130.    Similarly, the Constitution of the Commonwealth of Pennsylvania in Article I, Section 26 (No Discrimination by Commonwealth and its Political Subdivisions) and Article I, Section 29 (Prohibition Against Denial or Abridgment of Equality of Rights because of Race and Ethnicity)  provides as follows:

**§26.  No Discrimination by Commonwealth and its Political Subdivisions**
Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.
(May 16, 1967, P.L.1035, J.R.1)

**§29.  Prohibition Against Denial or Abridgment of Equality of Rights because of Race and Ethnicity**

Equality under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the race or ethnicity of the individual.
(May 18, 2021, P.L.493, J.R.1)

131.    Plaintiff's right to be free from illegal searches and seizures, false arrest, false imprisonment, malicious prosecution and the damages and injuries related thereto is fundamental under the United States Constitution including the Fourth and Fourteenth Amendments, and the Pennsylvania Constitution, including Article I, Sections 8, 26 and 29.

132.    At all times herein mentioned, the Fourteenth Amendment to the United States Constitution and its progeny prohibit discrimination against citizens of the United States, including Plaintiff,  on such bases, *inter alia*, as race, skin color, and national origin, and to the deprivation of life, liberty, or property without due process of law or the equal protection of  law.

133.    At all times herein mentioned, the conduct of the Defendants, Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Lieutenant Otto was motivated by an outrageous,  invidious, and  blatant discriminatory animus directed at Plaintiff due to his

membership in the Constitutionally-protected classifications of race/national origin (African-American) and skin color (Black), as evidenced by Defendants Spicer's and Norman's references to Plaintiff as "nigger," an odious, highly offensive, and outrageous racial slur in American English used against Black Americans.

134.    The conduct of Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Lieutenant Otto constitutes a violation of the Fourth and Fourteenth Amendments to the United States Constitution, Article I, Sections 8, 26 and 29 of the Pennsylvania Constitution, and Plaintiff's right to personal security, life and liberty and to be free from arbitrary, reckless and punitive government actions which shock the conscience.

135.    At all times herein mentioned, Plaintiff had a constitutional right and a liberty interest in his good name, reputation, honor and integrity without having the same being damaged as a direct result Defendants' illegal conduct, as heretofore described.

136.    Defendants' actions permanently damaged Plaintiff's 14th Amendment liberty interest in his good name and reputation by incarcerating him for 260 days without probable cause or legal justification, involuntarily separating him from his employment and/or the work force, and stigmatizing and adversely impacting his ability in the future to pursue his chosen profession or to be gainfully employed in the workforce as a proximate result of his unlawful and unjustified conviction of the aforesaid loathsome criminal offenses described in Exhibit "A."

137.    Plaintiff was deprived of his 14th Amendment liberty interest without procedural and substantive due process of law by virtue of the unlawful psychological duress, coercion, fear, and intimidation exerted and inflicted upon him by the aforementioned Defendants, including their threat to wrongfully incarcerate him for 5 years in state prison if he did not plead guilty to the above-named criminal offenses, and by Defendants' use of perjured, false, and fraudulent testimony and evidence in

order to secure a legally unjustifiable conviction in the above-referenced criminal prosecution.

138.    Plaintiff sustained grievous injuries and damages, as heretofore described, as a direct and proximate result of the above-described unconstitutional, unlawful, corrupt, and willful conduct and perjured testimony of Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and/or Lieutenant Otto.

139.    The actions of Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and/or Lieutenant Otto were willful, wanton, malicious, oppressive and unjustified.

140.    The actions of Defendant Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Lieutenant Otto, were accepted, acquiesced to, condoned, adopted, ratified and participated in by Defendant City of Philadelphia, its high-ranking policymakers/decisionmakers, agents, and the supervisory/ management level employees of the police department, who, at all times, acted under color of state law and with actual and constructive notice of the illegality of the Defendants' joint and individual actions on June 16, 2010 and continuing through Plaintiff's on March 3, 2011 conviction and sentencing on the aforesaid criminal offenses.

141.    All of the above-named Defendants, jointly and severally, have deprived Plaintiff of both substantive and procedural due process of law by engaging in the above-described illegal conduct.

142.    As a result of the action of the Defendants as set forth above, Plaintiff is entitled to punitive damages and attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Lamont Miller, respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants for all damages suffered by him, including

compensatory damages, punitive damages against individual Defendants, interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988, and such other relief that this Honorable Court deems just and reasonable.

## COUNT III –
## VIOLATION OF 42 U.S.C. § 1983 - SUPERVISORY LIABILITY
## (PLAINTIFF v. DEFENDANT OTTO )

143.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1 through 113 and Counts I and II as though the same were more fully set forth at length herein.

144.    Plaintiff avers that during the period when Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, and Speiser violated his constitutional and civil rights as previously described, Defendant Otto served in a supervisory or management capacity of said Defendants on behalf of Defendant, City of Philadelphia.

145.    At all times, Defendant Otto was present for some or all of the actions of Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, and Speiser vis-à-vis Plaintiff on June 16, 2010 and/or had actual or constructive knowledge of same, and accepted, approved, condoned, ratified, and acquiesced to same in his supervisory or managerial capacity on behalf of the Defendant, City of Philadelphia.

146.    Defendant Otto, Defendant City of Philadelphia, its high-ranking policymakers/decisionmakers and the supervisory/management level employees of the police department directed the conduct of Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, and Speiser on June 16, 2010 which resulted in the violation of Plaintiff's civil rights, as heretofore alleged, and/or had actual knowledge of the violation of said federal rights by the subordinate defendants and accepted, approved, condoned, ratified, and acquiesced in

-33-

said violations throughout Plaintiff's 260 days of unlawful incarceration until the *nolle prosequi* of said criminal charges by the District Attorney of Philadelphia County on or about April 8, 2016.

147.   At all times herein mentioned, Plaintiff's civil and constitutional rights as heretofore described were well-established and well-known to Defendant Otto.

148.   At all times herein mentioned, Defendant Otto, knew or should have known, and had actual and constructive knowledge that the above-described actions of Defendants  Michael Spicer, Betts, Liciardello, Norman, Reynolds, and Speiser vis-à-vis Plaintiff on June 16, 2010 were substantially certain to result in an unlawful violation of his federal and state civil and constitutional rights and the damages heretofore described.

149.   Defendant Otto acted with deliberate indifference to the unlawful, corrupt, perjured, and unconstitutional conduct of the above-named Defendants and failed to impose any appropriate disciplinary, supervisory, and/or corrective training or  remedial measures upon said Defendants in order to protect the Plaintiff's civil rights.

150.   Defendant Otto's failure to properly supervise, train, and discipline Defendants Michael Spicer,  Betts, Liciardello, Norman, Reynolds, and Speiser proximately caused Plaintiff to be deprived of his civil rights and to suffer the damages described above and as such, said supervisory Defendant is personally liable for all damages and injuries to Plaintiff.

WHEREFORE, Plaintiff Lamont Miller, respectfully  requests that this Honorable Court enter judgment  against Defendant Otto  for all damages suffered by Plaintiff, including compensatory damages, punitive damages, interest,  injunctive relief, attorney's fees and costs

under 42 U.S.C. §1988, and such other relief that this Honorable Court deems just and reasonable.

**COUNT IV-**
**VIOLATION OF 42 U.S.C. § 1983, 1985 - CONSPIRACY**
**(PLAINTIFF vs. DEFENDANTS SPICER, BETTS, LICIRADELLO, NORMAN, REYNOLDS, SPEISER AND OTTO)**

151.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1 through 113 and Counts I, II, and III are incorporated by reference as though set forth at length below.

152.    Prior to June 16, 2010, Defendant City of Philadelphia, by and through its high- ranking policymakers/decisionmakers and supervisory/management level employees of the police department established quotas for narcotics arrests on behalf of the police officers assigned to the narcotics units.

153.    The aforesaid quotas for narcotics arrests were established as a result of a pattern, practice, custom and policy of the Defendant City of Philadelphia.

154.    Pursuant to the aforesaid pattern, practice, custom and policy, Defendant City of Philadelphia directed police officers assigned to the narcotics units to take all necessary steps to effectuate drug-related arrests and/or to meet the aforesaid quotas.

155.    On or before June 16, 2010, Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto entered into a conspiratorial agreement to execute warrantless searches and seizures without probable cause or consent, to falsify information and evidence necessary to arrest, incarcerate and prosecute innocent citizens, including Plaintiff, for narcotics offenses and to subject them to false arrests, false imprisonment, malicious prosecutions, violations of equal protection and due process of law, and other related injuries and damages.

-35-

156.    Defendants entered into the aforesaid conspiratorial agreement in order to meet the quotas for narcotics arrests established by their supervisors.

157.    Alternatively, notwithstanding any quotas, Defendants entered into the aforesaid conspiratorial agreement pursuant to a wanton, willful, illegal motive to effectuate a high number of drug related arrests and to deprive innocent citizens, including Plaintiff, of their civil rights under the Fourth and Fourteenth Amendments to the United States Constitution, Article I, Sections 8, 26 and 29 of the Pennsylvania Constitution, and their progeny.

158.    The aforesaid conspiratorial agreement between the above-named Defendants  was initially entered into prior to June 16, 2010 and was continued, ratified, re-employed and/or re-entered on June 16, 2010 and thereafter.

159.    On June 16, 2010, Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto,  jointly and severally,  engaged in overt acts in furtherance of said conspiratorial agreement  by conducting a warrantless search and seizure of Plaintiff without probable cause or consent, by terrifying Plaintiff and his minor son, and by subjecting Plaintiff to  false imprisonment, malicious prosecution, equal protection and due process of law violations in violation of the Fourth and Fourteenth Amendments to the United States Constitution, Article I, Sections 8, 26 and 29 of the Pennsylvania Constitution, and their progeny.

160.    The aforesaid conspiratorial agreement entered into by Defendants lasted through Plaintiff's arrest, incarceration for 260 days,  and sentencing on March 3, 2011, until

the aforesaid criminal charges were *nolle prosequied* by the District Attorney of Philadelphia County on April 8, 2016.    The aforesaid conspiratorial agreement between Defendants further lasted through the Motion For A New Trial, Post-Conviction Collateral Relief and For A Writ of Habeas Corpus by the Defender Association of Philadelphia, the Order granting said Motion entered into by the Honorable Sheila Woods-Skipper, and the Court's dismissal of all criminal charges against Plaintiff pursuant to the  Philadelphia District Attorney's *nolle prosequi* of said criminal charges on April 8, 2016.

161.    Defendants,  acting under color of state law and motivated by invidious discriminatory  prejudice and animus against the Plaintiff, including prejudice against Plaintiff due to his race/national origin (African-American) and skin color (Black), conspired with each other for the purpose of impeding, obstructing, hindering and defeating the due course of justice and with the intent to deny Plaintiff his civil rights under the Fourth and Fourteenth amendments of the United States Constitution, Article I, Sections 8, 26 and 29 of the Pennsylvania Constitution, and their progeny.

162.    Defendants conspired to engage in the conduct alleged above, whereby each Defendant acted in concert, pursuant to an agreement, to cause the stated harm and facilitate the conspiratorial objective of inflicting the resulting harm upon Plaintiff by their own acts or omissions or by those of fellow co-conspirators.

163.    In furtherance of the aforesaid conspiracy, the Defendants committed the overt acts set forth above, thereby proximately causing Plaintiff to suffer and sustain the civil rights deprivations, injuries and special damages more fully set forth herein.

164.    Each Defendant named herein acted in concert and pursuant to a conspiratorial objective and agreement to execute warrantless searches and seizures without probable cause or consent, to falsify information and evidence necessary to arrest, incarcerate and prosecute, and to subject innocent civilians, such as Plaintiff, to false arrests, false imprisonment, malicious prosecutions, deprivations of equal protection and due process of law, and resulting injuries and damages.

165.    Each Defendant named herein acted in concert and pursuant to a conspiratorial objective and agreement to support the official version of facts offered by each Defendant officer, including Defendant Michael Spicer, and to support the warrantless searches and seizures without probable cause or consent, falsification of facts and evidence necessary to arrest, incarcerate and prosecute innocent civilians, including Plaintiff, and to effectuate a high number of drug-related arrests and convictions in order to meet the aforesaid Departmental quota, regardless of the innocence of those arrested,.

166.    Each Defendant named herein acted in concert and pursuant to a conspiratorial objective and agreement to justify the false arrests, incarceration and prosecutions of innocent citizens, such as Plaintiff,  and at all times their conduct was accepted, approved, condoned, acquiesced to, adopted and participated in by Defendant City of Philadelphia, its policymakers, supervisors and management level employees, who acted under color of state law, and with prior actual and/or constructive knowledge of said illegality, as set forth in paragraphs 80-84, and  169 of the within Amended Complaint.

167.    The damages and injuries suffered by Plaintiff were the direct and proximate result of the aforesaid conspiracy engaged in by each Defendant.

WHEREFORE, Plaintiff Lamont Miller respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants for all damages suffered by him, including compensatory damages, punitive damages against individual Defendants, interest, injunctive relief, attorney's fees and costs under 42 U.S.C. §1988, and such other relief that this Honorable Court deems just and reasonable.

<u>COUNT V –<br>
VIOLATION OF 42 U.S.C. § 1983 – *MONELL*/MUNICIPAL LIABILITY<br>
PLAINTIFF vs. DEFENDANT CITY OF PHILADELPHIA</u>

168.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1 through 113 and Counts I, II, III, and IV as though set forth at length below.

169.    Prior to June 16, 2010, Defendant, City of Philadelphia possessed actual and constructive knowledge of:

> (a) the civil rights violations committed by the above-named Defendants, as well as other police officers in its narcotics division, and ultimately giving rise to the *nolle prosequi* by the Commonwealth in 2012 of more than One Thousand Four Hundred (1,400) criminal prosecutions participated in by said Defendants;

> (b) the Defendants' history and propensity to utilize racial intimidation, coercion, and false, manufactured, and perjured testimony to violate the civil rights of its citizens and visitors, including Plaintiff, all of which ultimately resulted in a directive from the Philadelphia District Attorney's Office in December 2012 that the above-named Defendant officers would no longer be permitted to serve as witnesses in narcotics cases;

> (c) the facts and information which ultimately formed the basis for a federal indictment in the United States District Court for the Eastern District of Pennsylvania (case number 2:14-cr-00412-ER-1) against, and the July 30, 2014 arrest of, Defendants Spicer, Betts, Liciardello, Norman, Reynolds and Speiser for racketeering, conspiracy, civil rights violations, robbery and extortion. The factual allegations contained in the sealed indictments referenced in subparagraph (c) above are incorporated by reference herein as

though set forth at length below; and

(d) the September, 2014 motion by the Defender Association of Philadelphia, by and through Assistant Defender Bradley S. Bridge (hereinafter "Attorney Bridge"), for a "New Trial Based Upon After Discovered Evidence; Alternatively, For Post Conviction Collateral Relief; Or Alternatively, For A Writ of Habeas Corpus," attached hereto as Exhibit "B" and incorporated by reference as though set forth at length below .

170.    Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action -- the deliberate indifference -- necessary to trigger municipal liability. _Connick v. Thompson_, 563 U.S. 51, 61-62  (2011).

171.    A local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of §1983. _Connick v. Thompson_, 563 U.S. 51, 61 (2011).

172.    Defendant City of Philadelphia's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by Defendant City itself to violate the Constitution.   _Connick v. Thompson_, 563 U.S. 51, 61-62 (2011).

173.    A single action may represent an act of "official government policy" if the acting official is an authorized decision-maker. _Connick v. Thompson_, 563 U.S. 51, 61-62 (2011).

174.    Deliberate indifference requires proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when municipal policymakers are on actual or constructive notice that a particular omission in their training program causes their employees to violate citizens' constitutional rights, the municipality may be deemed deliberately indifferent if the policymakers choose to retain that program. _Board of Comm'rs of Bryan Cty._ v. _Brown_, 520 U.S.

397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626. Pp. 59-62, 179 L. Ed. 2d, at 425-427; *Connick v. Thompson*,

563 U.S. 51, 61, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417, 427, (2011).

175.    Prior to June 16, 2010, Defendant City of Philadelphia developed and main-maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons within the Commonwealth of Pennsylvania, which caused the violation of the rights of the Plaintiff.

176.  Prior to June 16, 2010, it was the policy and custom of Defendant  City of Philadelphia to inadequately interview and screen during the hiring process for its police officers and  to  inadequately  train,  re-train  and  supervise  its  police  officers,  including  Defendants Michael  Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto.

177.    The failure of Defendant City of Philadelphia to properly interview, screen, train, retrain and supervise its police officers resulted in its failure to adequately discourage and prevent constitutional and civil rights violations on the part of its police force, including Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto.

178.    Defendant  City of Philadelphia did not mandate adequate or appropriate service training of its police officers, including the above-captioned Defendants, who were known in the past to Defendant City of Philadelphia to have engaged in police misconduct, civil and constitutional rights violations and actions which posed a risk to the safety and well-being of the citizens of the Commonwealth of Pennsylvania.

179.    Defendant City of Philadelphia further failed to mandate adequate or appropriate in-service training or discipline to those officers who were known to encourage or tolerate the aforesaid  misconduct,  including  Defendant  Michael  Spicer,   Betts,  Liciardello,  Norman,

Reynolds, Speiser, and Otto.

180.   Defendant City of Philadelphia failed to provide proper training to its police officers concerning search and seizures, the requirement of probable cause and protecting innocent citizens from false arrests, false imprisonment, malicious prosecutions, equal protection and due process of law violations, and other related injuries and damages.

181.   The actions and conduct of  Defendants Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto in the within matter were caused by a policy, practice and custom of the Defendant City of Philadelphia of failing, with deliberate indifference, to supervise and properly train its police officers in the legal search and seizure mandates, the requirement for probable cause,  the duty to protect innocent civilians from false arrests, false imprisonment, malicious prosecutions, equal protection and due process of law violations, and other related injuries and damages, and the duty to provide truthful information to Philadelphia police investigators, IAD,  and to the Philadelphia District Attorney's Office.

182.   Defendant City of Philadelphia   failed to properly discipline Defendants Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto, as well as other officers in the police department in cases involving improper police tactics;  warrantless searches and seizures without probable cause or consent;  the investigation of citizens/civilians; ignoring or refusing to consider exculpatory evidence;   conducting improper, defective, careless and incomplete investigations resulting in the false arrests, false imprisonment, malicious prosecutions and equal protection and due process of law violations of citizens of the Commonwealth of Pennsylvania without probable cause and/or consent.

183.    Defendant City of Philadelphia maintained a grossly, systemically deficient process of review of police misconduct, including abuse of police powers or violations of citizens' rights by police officers, as indicated by the aforementioned federal indictment of the above-captioned Defendants.

184.    Defendant City of Philadelphia  failed to identify instances of abusive police powers or violations of citizens' rights by police officers or to discipline, more closely supervise, or re-train officers who abuse their police powers or violate citizens' rights, including Defendants Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto.

185.    The lack of meaningful investigation, supervision and discipline of officers accused of misconduct was a custom so deeply ingrained as to constitute the actual policy of Defendant City of Philadelphia, and ultimately  necessitating the remedial  actions set forth in paragraph 168 above.

186.    Defendant City of Philadelphia was deliberately indifferent to the need for a system of discipline that insured consistent and certain punishment for police officers who violated the rights of citizens or departmental directives.

187.    Defendant City of Philadelphia failed to devote adequate staff and resources to litigating officer appeals of disciplinary decisions imparted by police supervisors/management.

188.    Defendant City of Philadelphia failed to adequately train its staff or otherwise provide them with training and support to litigate officer appeals of disciplinary decisions by police supervisors/management.

189.    Defendant City of Philadelphia failed to insure timely investigations, disciplinary proceedings, disciplinary decisions and hearings on appeals of the disciplinary decisions of police supervisors/management.

190.    The foregoing acts, omissions, systemic deficiencies, custom and deliberate indifference caused police officers, including Defendants Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto, to believe that their misconduct, including the violation of citizens' rights, would not be promptly punished and that any punishment or discipline imposed would be delayed for years and ultimately overturned, with the foreseeable result that said officers believed that they could violate the rights of citizens, such as Plaintiff, with impunity.

191.    The foregoing acts, omissions, systemic deficiencies, customs and deliberate indifference caused police officers, including Defendants Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto, to believe that police misconduct, including the violations of citizens' rights, would not be meaningfully investigated or that no meaningful sanctions, punishment or discipline would be imposed, with the foreseeable result that said officers believed that they could violate the rights of citizens, such as Plaintiff, with impunity.

192.    Defendant City of Philadelphia was deliberately indifferent to the need for greater training, supervision and discipline of its police officers and created a situation wherein its police officers, such as Defendants Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto, believed that they could blatantly conduct warrantless searches and seizures without probable cause or consent and prosecute innocent citizens with impunity, with the foreseeable result of subjecting Plaintiff to false arrest, false imprisonment, malicious

prosecution, violation of equal protection and due process of law, and other related injuries and damages.

193.    Defendant City of Philadelphia was deliberately indifferent to the risks attendant to: (i) inadequate police training concerning warrantless searches and seizures without probable cause or consent; (ii) subjecting innocent citizens and visitors, such as Plaintiff, to false arrests, false imprisonment, malicious prosecutions, equal protection and due process of law violations, and other related injuries and damages; and (iii) to the need to avoid constitutional deprivations of its citizens and visitors, such as those committed against Plaintiff by Defendants Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto.

194.    The rights of citizens, including Plaintiff, to be free from illegal searches and seizures, false arrests, false imprisonment, malicious prosecutions and due process violations are well established, fundamental and protected by the Fourth and Fourteenth Amendments to the United States Constitution and Defendants were aware or should have been aware of these rights and the constitutional protections.

195.    Defendant City of Philadelphia, its decisionmakers, supervisory, and management level employees had a duty to protect the constitutional rights of Plaintiff, other citizens, and visitors.

196.    Defendant City of Philadelphia breached its duty to protect the constitutional rights of Plaintiff and other citizens and visitors and, as a result, is liable to Plaintiff for all injuries and damages suffered by him as a proximate result of being subjected to an illegal search and seizure, false arrest, false imprisonment, malicious prosecution, violations of equal protection and due process of law, and other specific injuries and damages set forth in the within Amended

Complaint.

WHEREFORE, Plaintiff Lamont Miller, respectfully requests this Honorable Court to enter judgment in his favor and against Defendant City of Philadelphia for all damages suffered by him, including compensatory damages, interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988, and such other relief that this Honorable Court deems just and reasonable.

### COUNT VI -
### SUPPLEMENTAL STATE LAW CLAIM - 28 U.S.C. §1367(a) -
### FALSE IMPRISONMENT
### (PLAINTIFF VS. INDIVIDUAL DEFENDANTS)

197.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1 through 113 and Counts I, II, III, IV, and V as though set forth at length below.

198.    The law of the Commonwealth of Pennsylvania recognizes the tort of false imprisonment. Pa.SSJI (Civ) 17.50.

199.    The conduct of Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto constitutes a false imprisonment of Plaintiff under the laws of the Commonwealth of Pennsylvania, and proximately resulted in Plaintiff sustaining the damages and injuries set forth herein.

200.    "The gist of false imprisonment is unlawful detention," _McCarthy v. De Armit_, 99 Pa. 63, 71 (1881). The elements of the tort are, thus, detention and the unlawfulness of the detention, _Lentz v. Raum_, 59 Pa.Super. 260 (1915). It is presumed under the instruction that a confinement against the consent of the person confined is unlawful unless otherwise privileged, see _Restatement (Second) of Torts § 35(1)(c) and (d) (1965)_. Malice is not an element of the tort of false imprisonment, _id., § 44;_ it is said to be inferred from the absence of probable cause,

*McCarthy v. De Armit*, above.

201.    One who intentionally causes the false arrest of another person is responsible to that person for all harm caused by the arrest.  Pa.SSJI (Civ)  17.50.

202.     An arrest is the taking of another person into custody under an assertion of legal authority to do so and for the purpose of bringing that person before a court or otherwise securing the administration of law. Pa.SSJI (Civ)  17.50.

203.    A false arrest is (1) an arrest made without probable cause, or (2) an arrest made by a person without privilege to do so.  Pa.SSJI (Civ)  17.50.

204.    Lack of probable cause means that the person making the arrest did not believe at the time of the arrest, and a reasonable person under the same circumstances would also not have believed, that they had sufficient information of both the facts and the applicable law, to reasonably believe that a crime had been [or was being] committed and that the person arrested was guilty of committing the crime.  Pa.SSJI (Civ)  17.50.

205.    There is no specific minimum length of time required to constitute a confinement, *Oswald v. Kennedy*, 49 Pa. 9 (1864) (short period of time); *Butler v. Stockdale*, 19 Pa. Super. 98 (1902) (two or more hours), and it is not necessary that the plaintiff have known at the time that he was confined as long as he was harmed as a result. *Restatemend (Second) of Torts, §§ 35(1)(c) and 42* (1965); W. Prosser, *Handbook of the Law of Torts* 42-43 (4th ed. 1974).

206.    An arrest may be made without a formal declaration of arrest or the application of physical force, *Commonwealth v. Friel,* 234 A.2d 22 (Pa.Super.  1967), and any act that indicates an intention to take the individual into custody and results in subjecting him or her to custody is sufficient. *Commonwealth v. Richards, 327 A.2d 63 (Pa. 1974).*

207.    In the instant case, the Plaintiff was subjected by Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto to an  unlawful arrest and incarceration for a period of 260 days, to wit, from June 16, 2010 until March 3, 2011.

208.    Plaintiff was injured and damaged as a direct and proximate result of the actions of Defendants Michael Spicer,  Betts, Liciardello, Norman, Reynolds, Speiser, and Otto, who acted with the intent to arrest and confine Plaintiff unlawfully and without probable cause, and such actions were the actual and proximate cause of Plaintiff's confinement.

209.    The individual Defendants, to wit, Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto,  are liable to Plaintiff for the tort of  false imprisonment under the laws of the Commonwealth of Pennsylvania under the facts set forth above.

210.    The aforesaid actions of the Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto vis-à-vis Plaintiff were outrageous.

211.    Pennsylvania has embraced the guidelines of section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages. They may be awarded for conduct that is outrageous because of the defendant's evil motive or his reckless indifference to the rights of others. Punitive damages must be based on conduct which is malicious, wanton, reckless, willful or oppressive. Further, one must look to the act  itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties. _Feld v. Merriam_, 314 Pa. Super. 414, 485 A.2d 742 (1984).; _Naughton v. Mercy Hosp._, 1989 Pa. Dist. & Cnty. Dec. LEXIS 109, *18-19, 4 Pa. D. & C.4th 628, 641.

WHEREFORE, Plaintiff Lamont Miller, respectfully requests that this Honorable Court enter judgment in his favor and against the individual Defendants for all damages suffered by him, including compensatory damages, punitive damages, interest, injunctive relief, attorney's fees and costs and such other relief that this Honorable Court deems just and reasonable.

## COUNT VII –
## SUPPLEMENTAL STATE LAW CLAIM - 28 U.S.C. §1367(a) -
## MALICIOUS PROSECUTION
## (PLAINTIFF VS. INDIVIDUAL DEFENDANTS)

212. Plaintiff hereby incorporates by reference the allegations in Paragraphs 1 through 113 and Counts I, II, III, IV, V, and VI as though set forth at length below.

213. The law of the Commonwealth of Pennsylvania recognizes the tort of malicious prosecution. Pa.SSJI (Civ) 17.60.

214. Defendant City of Philadelphia and its high-ranking policymakers/decisionmakers and the supervisory/management level employees of the police department failed to intervene to allow a bail reduction or to dismiss the false charges against Plaintiff and to relieve Plaintiff of the hardship of having to defend against the prosecution of said charges by Defendants.

215. Defendant City of Philadelphia and its high-ranking policymakers/decisionmakers and the supervisory/management level employees of the police department failed to intervene to allow a bail reduction or to dismiss the false charges against Plaintiff and to relieve Plaintiff of the hardship of having to defend against the prosecution of said charges by Defendants.

216.    Defendants lacked probable cause for the  filing of criminal charges against Plaintiff, for continuing to prosecute Plaintiff on said illegal and false charges, and for subjecting Plaintiff to the criminal justice system.

217.    As a result of the Defendants' actions, Plaintiff was unable to raise funds and to secure his liberty, of which he had been wrongfully and illegally deprived by Defendants.

218.    As a result of Defendants' actions, Plaintiff had to appear before a magistrate district justice for a preliminary hearing on the false charges brought by Defendant Michael Spicer.

219.    Defendants acted maliciously in arresting and continuing to prosecute Plaintiff and their actions were for a purpose other than bringing Plaintiff to justice.

220.    Defendants acted maliciously, spitefully, and with ill will  in that said they lacked a genuine belief in the propriety of their arrest and prosecution of Plaintiff on the aforesaid charges.

221.    Defendant Michael Spicer,   Betts, Liciardello, Norman, Reynolds, Speiser, and/or Otto knew or should have known from the outset that the criminal charges against Plaintiff were without probable cause and that there was insufficient evidence to sustain the criminal charges against Plaintiff.

222.    Defendant Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and/or Otto knowingly ignored overwhelming exculpatory evidence, thereby providing false information to the prosecutor/District Attorney in order to insure that criminal charges were filed against Plaintiff.

223.    Defendant Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and/or Otto knowingly and intentionally interfered with any informed discretion on behalf of the prosecutor/District Attorney of Philadelphia County by ignoring overwhelming exculpatory evidence and thereby providing false information against Plaintiff, specifically that Plaintiff had engaged in any illegal conduct justifying the filing of the criminal charges in the within matter.

224.    Defendant Michael Spicer's arrest of Plaintiff was without probable cause and illegal and formed a basis for Plaintiffs custodial confinement and the deprivation of his liberty.

225.    On April 8, 2016, a *Nolle Prosequi* was entered by the Philadelphia District Attorney's Office pursuant to Pa.R.Crim.P. 585 and all criminal charges against the Plaintiff were dismissed. (See Exhibit "C")

226.    In order to sustain a cause of action for malicious prosecution, the plaintiff must prove that the defendant instituted proceedings against the plaintiff without probable cause and with malice, and that the proceedings were terminated in favor of the plaintiff. *Kelley v. General Teamsters, Chauffeurs, & Helpers, Local Union 249*, 544 A.2d 940 (Pa. 1988).

226.    The conduct of the individual Defendants, as more fully described above, constituted and resulted in a malicious prosecution for which Defendants are liable to Plaintiff under the laws of the Commonwealth of Pennsylvania.

227.    The aforesaid actions of Defendants Michael Spicer, Betts, Liciardello, Norman, Reynolds, Speiser, and Otto vis-à-vis Plaintiff were outrageous.

228.    As a direct and proximate result of the individual Defendants' actions, Plaintiff suffered and continues to suffer physical pain, serious mental anguish, psychological and emotional distress, fear, anxiety, embarrassment, pecuniary loss, financial expenses, economic loss and the loss of the enjoyment of life and life's pleasures to his great detriment and for which he is entitled to recover.

WHEREFORE, Plaintiff Lamont Miller, respectfully requests that this Honorable Court enter judgment in his favor and against the individual Defendants for all damages suffered by him, including compensatory damages, punitive damages, interest, injunctive relief, attorney's fees and costs and such other relief that this Honorable Court deems just and reasonable.

### COUNT VIII – SUPPLEMENTAL STATE LAW CLAIM - 28 U.S.C. §1367(a) - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (PLAINTIFF VS. INDIVIDUAL DEFENDANTS)

229.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1 through 113 and Counts I through VII as though set forth at length below.

230.    Defendants Michael Spicer's, Betts', Liciardello's, Norman's, Reynolds', Speiser's, and/or Otto's aforesaid extreme and outrageous conduct, acts or omissions    in the scope of their employment  were calculated, designed and intended  to    inflict  emotional distress, psychological trauma, pain and suffering upon Plaintiff.

231.    The individual  Defendants engaged in said conduct  with intent to instill an immediate and permanent sense of fear in Plaintiff's mind.

232.    As a direct and proximate cause of the actions and/or omissions of the individual Defendants, Plaintiff suffered extreme emotional distress, fear, anxiety, embarrassment, pecuniary loss, loss of life's enjoyments and resulting physical pain and injuries, all to his great

detriment.

233.    The cause of action against the above-named individual Defendants for the tort of intentional infliction of emotional distress is recognized by the Pennsylvania courts under the laws of the Commonwealth of Pennsylvania.

234.    The actions of the individual Defendants against the Plaintiff, which constituted outrageous conduct, were known to, and intended by,  the Defendants and said actions directly and proximately caused Plaintiff to suffer emotional distress.

235.    The actions of the individual Defendants against Plaintiff constituted outrageous conduct which directly and proximately caused the Plaintiff to suffer severe emotional distress.

236.    As a direct and proximate result of the actions of the individual Defendants, as more fully described above, and the    extreme mental and emotional distress and physical illness suffered by Plaintiff as a proximate result thereof, Plaintiff incurred expenses, medical bills and economic loss, to his great financial detriment and for which he is entitled to recover damages.

237.    As a direct and proximate result of the outrageous conduct, actions and omissions of the individual Defendants and the resulting emotional and psychological stress and trauma, mental anguish, pain and suffering, fright, horror, grief, shame, humiliation, embarrassment, severe anger, disappointment, worry, medical expenses and economic loss, Plaintiff is entitled to punitive damages against the individual Defendants.

WHEREFORE, Plaintiff Lamont Miller, respectfully requests that this Honorable Court enter judgment in his favor and against the individual Defendants for all damages suffered by him, including compensatory damages, punitive damages, interest, injunctive relief, attorney's fees and costs, and such other relief that this Honorable Court deems just and reasonable.

### COUNT IX –
### SUPPLEMENTAL STATE LAW CLAIM - - 28 U.S.C. §1367(a) -
### VIOLATION OF THE PENNSYLVANIA CONSTITUTION
### (PLAINTIFF VS. ALL DEFENDANTS)

238.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1 through 113 and Counts I through VIII as though set forth at length below.

239.    Defendants' above-described conduct has deprived Plaintiff of his rights pursuant to the Constitution of the Commonwealth of Pennsylvania as heretofore described.

WHEREFORE, Plaintiff Lamont Miller, respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants, jointly and severally, and determine that the Plaintiff has suffered the substantial and continuing injuries set forth above and that said injuries resulted from the deprivation of his civil and constitutional rights, discrimination and other wrongful conduct by Defendants, and award Plaintiff the following relief:

      a.    A declaration that Defendants have violated Plaintiff's civil rights;

      b.    Injunctive relief, including entering an Order enjoining Defendants and its police department and all supervisory and management level employees of the Defendant City of Philadelphia from engaging in further violations of the rights of citizens including the right to be free from illegal searches and seizures, false arrest, false imprisonment, malicious prosecution and violations of equal protection and due process of law, and directing that Defendant City of Philadelphia  undertake a remedial program to provide regular and periodic training to it employees and police officers concerning the mandates of the Fourth and Fourteenth Amendments to the United States

Constitution and the Constitution of the Commonwealth of Pennsylvania;

c.     compensatory damages;

d.     punitive damages against the individual Defendants;

e.     attorney's fees, interest and costs;

f.     such other equitable relief as this Honorable Court should deem just and proper.

## DEMAND FOR JURY TRIAL

240.  Plaintiff hereby demands a jury trial on all issues of fact and damages in this action.

Respectfully submitted,

*/s/ Dennis G. Charles, Esquire*
Dennis G. Charles, Esquire
441 Linden Street
Allentown, Pennsylvania 18102
610-437-7064
dennis@charleslaw.us
PA Attorney I.D. No. 30204
Attorney for Plaintiff

James J. Burke, Esquire
44 East Broad Street, Suite 215
Bethlehem, PA 18018
(610) 807-0213
PA Attorney I.D. No. 065243
Attorney for Plaintiff

-55-