**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LAMONT MILLER,

               *Plaintiff,*

    v.

CITY OF PHILADELPHIA, et al.,

               *Defendants.*

CIVIL ACTION
NO. 18-1443

Pappert, J.                                                  August 7, 2024

<u>**MEMORANDUM**</u>

Lamont Miller sued the City of Philadelphia as well as officers Michael Spicer, Perry Betts, Thomas Liciardello, Linwood Norman, Brian Reynolds, John Speiser[1] and Lieutenant Robert Otto.  Miller's claims are based on allegations that the Officer Defendants, members of the Philadelphia Police Department's Narcotics Field Unit (NFU), arrested him in 2010 and coerced him to plead guilty under threats of false testimony that would have ensured Miller's conviction and a five-year prison sentence. In 2014, numerous NFU officers were indicted, and in 2016, Miller's conviction was reopened and all criminal charges against him were *nolle prossed*.  He filed this lawsuit in 2018.

Along with other NFU cases, Miller's was consolidated before Judge Diamond and placed in suspense while bellwether cases went forward.  (ECF Nos. 4, 5).  In November 2023, Judge Diamond removed the case from suspense and reassigned it to this Court.  (ECF Nos. 8, 9).  Otto then moved to dismiss, prompting Miller to amend

---

[1]    Spicer, Betts, Liciardello, Norman, Reynolds and Speiser are referred to as the "Officer Defendants" throughout.

his complaint.  (ECF Nos. 17, 22).  In the amended complaint, Miller asserts federal claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments as well as supervisory liability, civil rights conspiracy[2] and municipal liability claims. Miller also alleges state law claims of false imprisonment, malicious prosecution, intentional infliction of emotional distress and violations of the Pennsylvania Constitution.  Otto again moves to dismiss along with the Officer Defendants and the City.  For the reasons that follow, Otto's motion is granted and all claims against him are dismissed, while the Officer Defendants and the City's motions are granted in part and denied in part.

I

On June 16, 2020, Miller attended a barbeque with his son near 68th and Carroll Streets in Southwest Philadelphia.  (Am. Compl. ¶¶ 19–20, 31).  While on his way, Miller alleges Norman and other Officer Defendants pulled up next to him in a black Jeep Cherokee with tinted windows.  (*Id.* ¶¶ 28–30).  Norman rolled down the window and yelled, "We are going to get you nigger."  (*Id.* ¶ 29).

Later on, Spicer and other Officer Defendants went to the barbecue and confronted Miller, demanding he empty his pockets.  (*Id.* ¶¶ 34–35, 145).  When Miller asked why, Spicer apparently said, "Shut the fuck up, nigger" and searched Miller three times.  (*Id.* 36–38).  Miller says those searches uncovered no contraband and Spicer took $465 that Miller's mother had given him to help pay his bills.  (*Id.* ¶¶ 39–41). Spicer did not provide a receipt for the cash nor did he mention it seized in an official

---

[2]    The conspiracy claim was also asserted under 42 U.S.C. § 1985.

2

report.  (*Id.* ¶¶ 40–41).  Miller was arrested and taken into custody in front of his son and others at the barbeque.  (*Id.* ¶ 42).

Spicer, along with other Officer Defendants, took Miller to 6844 Guyer Street, where, earlier that day, they had conducted a raid.  (*Id.* ¶¶ 33, 43).  Once there, Spicer violently threw Miller to the ground and accused him of possessing fourteen grams of crack cocaine.  (*Id.* ¶¶ 43–45).  In response, Miller said, "Come on officer, what is this? I am not stupid." (*Id.* ¶ 46).  Spicer responded, "I am not stupid either, nigger." (*Id.* ¶ 47).  When Miller said, "Please don't call me out by that name," Spicer allegedly replied, "I am the police and I do what I want." (*Id.* ¶ 48).

Spicer and the Officer Defendants then took Miller to police headquarters, where Miller was charged with various drug-related crimes.  (*Id.* Ex. A).  His bail was set at $200,000 but eventually raised to $500,000.  (*Id.* ¶¶ 50–51).  He was unable to make bail and remained incarcerated for 260 days.  (*Id.* ¶ 52).  Spicer advised Miller that he would receive probation and be released if he pleaded guilty to the charge of Manufacture, Delivery or Possession with Intent to Manufacture or Deliver a Controlled Substance.  (*Id.* ¶¶ 53–54).  But if he did not accept the plea deal, the officers would produce testimony ensuring Miller's conviction and a likely five-year prison sentence.  (*Id.* ¶¶ 55, 137).  Based on this threat, Miller pleaded guilty, and on March 3, 2011, he was released from prison.  (*Id.* ¶ 56–57).

In 2014, Spicer, Betts, Liciardello, Norman, Reynolds and Speiser were indicted for racketeering, conspiracy, civil rights violations, robbery and extortion.  (*Id.* ¶ 59). Based on the federal criminal case, the Defender Association of Philadelphia filed

petitions to reopen more than 1,400 convictions—including Miller's—in which those officers were involved.  (*Id.* ¶ 62).

## II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged."  *Id.*  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown, that the pleader is entitled to relief.  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  However, this "presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'"  *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

A court may dismiss claims based on the statute of limitations defense when the defense appears clearly on the face of the complaint. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

III

Both the Officer Defendants and Otto contend Miller has not alleged their personal involvement in the claims against them. (Mot. To Dismiss, ECF Nos. 24, 25).

To state a civil rights claim against an individual defendant, a plaintiff must "make[] sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Liability cannot be based "solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Ultimately, a complaint must allege sufficient facts to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Read in the light most favorable Miller, the complaint contains enough facts to allege plausible claims for relief against the Officer Defendants. Miller asserts that as he was walking to the barbecue, Norman, along with other Officer Defendants, pulled up next to him and threatened him using a racial epithet. (Am. Compl. ¶¶ 28–29). While at the barbecue, Miller alleges that Spicer, along with other Officer Defendants, confronted him and demanded he empty his pockets without any justification or

5

probable cause. (*Id.* ¶ 34–35). When Miller asked why, Spicer told him to shut up, also using a racial epithet. (*Id.* ¶ 36). After searching Miller three times and finding no illegal substances or contraband, Spicer took Miller's money and transported him to 6844 Guyer Street, where the Officer Defendants had previously conducted a raid. (*Id.* ¶¶ 37–38, 43). Once there, Miller was "violently" thrown to the floor and accused of possessing cocaine. (*Id.* ¶¶ 40–48). Miller further alleges that Spicer said, "I am the police and I do what I want," (*Id.* ¶ 48), and along with other Officer Defendants, arrested him and took him to police headquarters where he was charged. (*Id.* ¶ 49). Miller says that Spicer, "acting in concert" with other Officer Defendants, advised him he would receive probation and be released if he pleaded guilty; if he did not, Spicer, along with other Officer Defendants, would produce testimony ensuring his conviction and a longer prison sentence. (*Id.* ¶¶ 54–55).

Although Miller may not yet know which officers engaged in precisely what behavior, he alleges that in 2012 the Philadelphia District Attorney's Office barred the Officer Defendants from being witnesses in narcotics cases due to credibility concerns. (*Id.* ¶ 58). The Officer Defendants were later indicted for racketeering conspiracy, civil rights violations, robbery and extortion stemming from their work in the NFU. (*Id.* ¶ 59). Miller has thus put the Officer Defendants on notice of the nature and claims against them and plausibly alleged their involvement in the events surrounding his arrest and ultimate guilty plea. That is all he is required to do at this stage. *See, e.g., Brookins v. City of Phila.*, No. 24-470, 2024 WL 1889242, at \*3–5 (E.D. Pa. Apr. 30, 2024).

As to Otto, however, Miller fails to plausibly allege personal involvement.  Civil rights liability cannot be based solely on respondeat superior, *Rode*, 845 F.2d at 1207, and plaintiffs have failed to allege sufficient personal involvement of a defendant where, as here, the only factual allegations suggesting personal involvement were that the defendant was a supervisor.  *See Ogrod v. City of Phila.*, 598 F. Supp. 3d 253, 266 (E.D. Pa. 2022).

In another NFU case, the court dismissed claims against a supervisor where the allegations were that he approved an arrest report prepared by another officer and otherwise "may have been within a group" who concocted a story for the report. *McGhee v. City of Phila.*, No. 17-832, 2024 WL 1683606, at *8 (E.D. Pa. Apr. 18, 2024). In *McGhee*, the court emphasized that no allegations indicated the supervisor edited the report, was aware of the alleged falsehoods contained therein or had any active participation in the plaintiffs' arrests or investigation.  *Id.*  Moreover, no factual allegations supported the speculative assertion that the defendant "may have been within the group of officers who acted in concert and conspired with each other to concoct a story for the report."  *Id.* (internal quotation marks omitted).

Miller's allegations against Otto are weaker than those found insufficient in *McGhee*.  No alleged facts suggest Otto was involved in or knew about the Officer Defendants' actions.  Miller attempts to salvage his claims by baldly asserting Otto was "present for some or all" of the Officer Defendants misconduct "and/or" possessed actual or constructive knowledge of their behavior.  (Am. Compl. ¶ 145).  Aside from the allegation that Otto was a supervisor, (*id.* ¶ 16), no facts support this speculative assertion.  *See Ogrod*, 598 F. Supp. 3d at 274.

7

Nor has Miller asserted a plausible claim for supervisory liability. Such a claim can be asserted in two ways. First, individuals who are policymakers may be liable under § 1983 if it is shown that "with deliberate indifference to the consequences," they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original). Second, supervisors can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Ogrod*, 598 F. Supp. 3d at 274. To the extent Miller's supervisory liability theory is based on Otto's role as a policymaker, other courts have held that a lieutenant is not a policymaker. *Davis v. City of Phila.*, No. 05-4571, 2009 WL 2461777, at *4 (E.D. Pa. Aug. 11, 2009) (finding captains, lieutenants, sergeants, inspectors, and deputies do not possess the type of authority necessary to be policymakers); *Keenan v. City of Phila.*, 983 F.2d 459, 468–69 (3d Cir. 1992) (holding mid-level officers do not have final, unreviewable authority). And Miller's "unadorned allegations" that Otto was "present for some or all" of the Officer Defendants misconduct "and/or" possessed actual or constructive knowledge of their behavior are "plainly insufficient to support a plausible claim for supervisory liability" based on Otto's participation, knowledge or acquiescence in the Officer Defendants' alleged misconduct. *See Ogrod*, 598 F. Supp. 3d at 274. As Miller fails to allege sufficient facts indicating Otto's personal involvement, all claims against him are dismissed.

IV

Next, the Officer Defendants contend that all Miller's claims—except the malicious prosecution claims and the conspiracy claim based on malicious prosecution—are time-barred as the events that give rise to those claims occurred in 2010 and 2011, at least seven years prior to when he filed his complaint.[3]  In response, Miller commingles the concept of equitable tolling, which governs the tolling of an already triggered statute of limitations, with the delayed accrual based in *Heck v. Humphrey*, 512 U.S. 477 (1994), which provides that § 1983 claims that necessarily imply the invalidity of a conviction or sentence do not accrue for statute of limitations purposes until the underlying criminal case is terminated in the plaintiff's favor.  *Coello v. DiLeo*, 43 F.4th 346, 355 (3d Cir. 2022).  First, he argues that equitable tolling saves his otherwise time-barred claims because he was under duress to plead guilty, and once he did, he could not sue because his claims became *Heck* barred.[4]  (Resp. To Mot. To

---

[3]     The City joins the Officer Defendants and moves to dismiss Counts I, II, III, IV, VI, VIII and IX for all causes of action except malicious prosecution.

[4]     Miller does not appear to argue Pennsylvania law would toll the statute of limitations based on duress.  In any event, such an argument would not help him.  *See Kach v. Hose*, 589 F.3d 626, 640 (3d Cir. 2009) ("[N]either the Supreme Court of Pennsylvania nor either of Pennsylvania's intermediate appellate courts has definitively, or even circumspectly, addressed whether duress may toll the statute of limitations.").  Nor would the duress constitute an extraordinary circumstance warranting equitable tolling under federal law.  *Compare id.* at 630–45 (plaintiff who failed to file suit because she was held captive by a security guard from her middle school for ten years did not meet her "burden of showing that this is one of those extraordinary cases warranting the application of any federal equitable tolling provision"), *Frasier-Kane v. City of Phila.*, 517 F. App'x 104, 106 (3d Cir. 2013) (plaintiff was not under sufficient duress to justify equitable tolling where she was subject to "acts of intimidation" and feared an officer would "severely injure or kill her" if she pursued legal action), *with Hilao v. Estate of Marcos*, 103 F.3d 767, 771–73 (9th Cir. 1996) (tolling statute of limitations for a class of Philippine nationals suing the former president alleging they suffered torture and human rights violations because victims "did not report the human rights abuses they suffered out of intimation and fear of reprisals" given the "effective dependence of the judiciary on [the former president]" as well as his immunity from suit while in office).  Any duress-based argument Miller could make would be akin to *Kach* and *Frazier-Kane*, and though his circumstances may be "'extraordinary' in the vernacular sense of that word," *Kach*, 589 F.3d at 645, they are not a basis for federal equitable tolling.

Dismiss, pp. 16–19, ECF No. 27-1).  Miller then claims that the two-year statute of limitations did not begin to run until the favorable termination of his underlying criminal proceedings in 2016.  (*Id.* at 19).

A

Equitable tolling is not appropriate here.  State tolling principles generally apply to § 1983 claims.  *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009).  But that rule is not absolute.  *Id.*  Where the state tolling principles contradict federal law or policy, federal tolling principles may apply.  *Id.* (citing *Bd. of Regents v. Tomanio*, 446 U.S. 478, 485 (1980)).  Miller appears to rely on federal equitable tolling principles, *see* (Resp. To Mot. Dismiss, p. 17, ECF No. 27-1), but he does not articulate which basis for tolling he relies upon, nor explain why Pennsylvania tolling principles are inconsistent with the policies underlying § 1983.  *See Frasier-Kane v. City of Phila.*, 517 F. App'x 104, 106 (3d Cir. 2013) ("[W]e are skeptical that Pennsylvania tolling principles frustrate the policies underlying § 1983.").

In any event, the Supreme Court declined to adopt a federal equitable tolling rule to these circumstances.  *Wallace v. Kato*, 549 U.S. 384, 394 (2007).  In *Wallace*, the Supreme Court recognized a "complication" that "arises from the fact that § 1983 actions, unlike the tort of malicious prosecution which *Heck* took as its model . . . sometimes accrue before the setting aside of—indeed, even before the existence of—the related criminal conviction."  *Id.  Heck's* application to such claims, the Court observed, "raises the question whether, assuming the *Heck* bar takes effect when the later conviction is obtained, the statute of limitations on the once valid cause of action is tolled as long as the *Heck* bar subsists."  *Id.* at 385.  There, as in Miller's case, "[i]f

10

petitioner's conviction . . . caused the statute of limitations on his (possibly) impugning but yet-to-be-filed cause of action to be tolled until that conviction was set aside, his filing [ ] would have been timely." *Id.* at 394.  After finding no basis for tolling in Illinois state law, the Supreme Court declined to recognize a federal equitable tolling rule in such circumstances.  *Id.*  Here, Miller has not identified, nor is the Court aware of, any basis under Pennsylvania law to toll the statute of limitations under these circumstances.

### B

Accrual is deferred under *Heck* only where "at the time the § 1983 suit would normally accrue, there is an *existing* criminal conviction."  *Dique v. N.J. State Police*, 603 F.3d 181, 187 (3d Cir. 2010) (discussing *Wallace*).  Aside from his malicious prosecution claims and conspiracy claim based on malicious prosecution, Miller's remaining federal and state law claims all accrued prior to his conviction in March 2011 and are not saved by the *Heck* delayed accrual rule.

### 1

The Court liberally construes Miller's omnibus Fourth Amendment claim to be for unlawful search,[5] false arrest, false imprisonment and malicious prosecution. Claims for an illegal search accrue when a plaintiff knew or should have known about the search.  *Estate of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 860-61 (3d Cir. 2014).  As Miller's unlawful search and seizure claim—to the extent he alleges one—is based on searches that occurred in June 2010 and prior to his conviction, *Heck*

---

[5]    *See* (Am. Compl. ¶¶ 118–19, ECF No. 22).

did not defer accrual.  *See Gilliam v. Cavallaro*, No. 22-1458, 2023 WL 2182371, at *2 (3d Cir. Feb. 23, 2023); *Smith v. Travelpiece*, 31 F.4th 878, 888 (4th Cir. 2022) (holding illegal search claims were not subject to deferred accrual under *Heck*).

"[F]alse arrest and false imprisonment claims accrue on the earlier of two dates: 'when the false *imprisonment* ends with the plaintiff's release' or, 'if the plaintiff remains detained, . . . when the *false* imprisonment ends with the issuance of legal process—when, for example, the plaintiff is brought before a magistrate.'" *Medina v. City of Allentown Police Dep't*, No. 23-2055, 2023 WL 7381461, at *2 (3d Cir. Nov. 8, 2023) (quoting *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1162 (6th Cir. 2021)); *see also Wallace*, 549 U.S. at 388.  Though Miller's arraignment date is not included in his complaint, the events surrounding his arrest occurred in June 2010, prior to his conviction on March 3, 2011.  As he did not bring his claims until 2018, the claim is time-barred.

2

Miller's Fourteenth Amendment equal protection claim accrued at the time Miller was detained pursuant to legal process.  *Dique*, 603 F.3d at 188 (claim for selective enforcement accrues at the time "the wrongful act resulting in damages occurs").  Moreover, the amended complaint contains facts showing Miller was aware of the facts necessary for his selective enforcement claim on the day of his arrest.  *See* (Am. Compl. ¶¶ 29, 36–38, 47).  Because he filed his initial complaint nearly eight years

later, the claim is time-barred.[6]  *See Bartley v. New Jersey*, No. 18-16283, 2021 WL 3884289, at *3 (D.N.J. Aug. 31, 2021), *aff'd,* 2022 WL 1599124 (3d Cir. May 20, 2022).

3

Miller's state law claims for false imprisonment and intentional infliction of emotional distress are not subject to *Heck*'s delayed accrual rule, *Coello*, 43 F.4th at 356, and no Pennsylvania court has expressly adopted such a rule.  *See Gordon v. Liciardello*, No. 19-3761, 2024 WL 3540979, at *4 (E.D. Pa. July 25, 2024).  As these claims for false imprisonment and intentional infliction of emotional distress do not "resemble the malicious prosecution tort," *Coello*, 43 F.4th at 356, they are time-barred.

4

Miller's conspiracy claim is timely to the extent it alleges a conspiracy to commit malicious prosecution, but, as discussed above, it is not timely as to a conspiracy to commit unlawful searches, false imprisonment, equal protection violations or intentional infliction of emotional distress.  *See Mills v. City of Phila.*, No. 14-593, 2023 WL 6520488, at *10 (E.D. Pa. Oct. 5, 2023).

---

[6]     The basis for Miller's Fourteenth Amendment due process claim is not clear.  As an initial matter, Miller asserts it under § 1983 and the Fourteenth Amendment, yet then cites provisions of the Pennsylvania Constitution.  *See* (Am. Compl. ¶¶ 130–31, 134).  In any event, the claim is ill-defined, and in certain respects, duplicative of his claims under the Fourth Amendment (Count I).  (*Id.* ¶ 131).  In some places, Miller alleges Defendants harmed his reputation and impacted his ability to obtain future employment, (*id.* ¶ 136), but a reputational interest is neither liberty nor property protected by the Due Process Clause.  *Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 401 (3d Cir. 2000).  In others, he discusses Defendants' potential use of fabricated evidence to secure a conviction against him.  (Am. Compl. ¶ 137).  Without knowing the basis for the claim, the Court cannot determine if some or all of it is time-barred.  *See McDonough v. Smith*, 588 U.S. 109, 117–18 (2019) (noting a fabrication of evidence claim did not accrue until favorable termination).  The Court will grant Miller leave to amend to more clearly present this claim.

5

Finally, Miller asserts a claim for "violation of the Pennsylvania Constitution" seeking declaratory and injunctive relief as well as damages. (Am. Compl. ¶ 239). To the extent this claim is based on claims not otherwise time-barred, there is no private cause of action for damages arising from violations of the Pennsylvania Constitution. *See Glover v. Oleyn*, No. 23-3688, 2024 WL 897577, at *3 (E.D. Pa. Feb. 29, 2024) (citing *Plouffe v. Cevallos,* 777 F. App'x 594, 601 (3d Cir. 2019)); *Jones v. City of Phila.*, 890 A.2d 1188, 1215–16 (Pa. Commw. Ct. 2006) (noting other remedies, such as declaratory or injunctive relief, are available). Count IX is thus dismissed as to Miller's claim for money damages.

V

The City moves to dismiss the *Monell* claim to the extent it is premised on a failure to train or discipline theory. In support of this assertion, it attaches the summary judgment decision from *McIntyre v. Liciardello*, No. 13-2733, 2020 WL 605717 (E.D. Pa. Feb. 7, 2020), where the court granted summary judgment for the City to the extent the plaintiff's *Monell* claim was based on a failure to train, supervise, or discipline. The City contends that Miller's *Monell* claim has already been litigated and should be dismissed pursuant to the law of the case doctrine.

The law of the case doctrine applies only to prior decisions made in the same case. *Home Depot USA, Inc. v. Lafarge North America, Inc.*, 59 F.4th 55, 58 (3d Cir. 2023). And consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *In*

*re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) (quoting *Johnson v. Manhattan R. Co.*, 289 U.S. 479, 497 (1933)).  Consolidating "multiple cases brought by multiple parties against multiple defendants for the purpose of streamlining discovery and trial does not transform those cases into one case" such that the law of the case doctrine would apply.  *West v. Warden*, 869 F.3d 1289, 1296 (11th Cir. 2017) (internal quotation marks omitted).

VI

Leave to amend may be denied if amendment would be futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  As to the claims against Otto, Miller has had ample opportunity to gather facts surrounding Otto's involvement in the Officer Defendants' alleged misconduct.  He has already amended his complaint and offered no factual allegations beyond that Otto was a supervisor.  As in *McGhee*, Miller's claims against Otto are dismissed with prejudice as further amendment would be futile.

Similarly, given there are no grounds for equitable tolling, Miller's claims dismissed based on the statute of limitations are also dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.